MARK BRNOVICH
ATTORNEY GENERAL
(FIRM STATE BAR NO. 14000)
JEFFREY SPARKS (AZ BAR NO. 27536)
DEPUTY SOLICITOR GENERAL/
SECTION CHIEF OF CAPITAL LITIGATION
LAURA P. CHIASSON (AZ BAR NO. 19025)
ASSISTANT ATTORNEY GENERAL
CAPITAL LITIGATION SECTION
400 WEST CONGRESS, BLDG. S–215
TUCSON, ARIZONA 85701–1367
TELEPHONE: (520) 628–6520
LAURA.CHIASSON@AZAG.GOV
CADOCKET@AZAG.GOV
ATTORNEYS FOR DEFENDANTS

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Frank Jarvis Atwood,<br><br>　　　Plaintiff,<br><br>-vs-<br><br>David Shinn, et al.,<br><br>　　　Defendants. | CV 22–00860–PHX–MTL (JZB)<br><br>**RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION** |

Defendants David Shinn, James Kimble, Jeff Van Winkle, Lance Hetmer, and Mark Brnovich (collectively Defendants)[1] hereby oppose Plaintiff Frank Atwood's Motion for Temporary Restraining Order and/or Preliminary Injunction. *See* Dkt. 16. This Court should deny Atwood's motion because he has not established a likelihood that he will succeed on the merits of his claims, that he will suffer irreparable harm, that "the balance of equities tips on his favor," or that "an injunction is in the public interest." *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (quotation marks omitted). This Response is supported by the attached Memorandum of Points and Authorities.

---

[1] The Arizona Attorney General does not represent the Doe defendant. Therefore, references to "Defendants" do not include the Doe defendant.

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Background.

In 1987, Atwood was sentenced to death for the 1984 murder of 8-year-old V.L.H. During the ensuing 30 years, Atwood pursued his appeals in the state and federal courts. On May 3, 2022, the Arizona Supreme Court issued a warrant for his execution, setting his execution for June 8, 2022. Because Atwood's crime was committed before November 23, 1992, he could choose to be executed either by lethal injection or lethal gas. *See* Ariz. Const. Art. 22, § 22. Atwood was required to make this choice "at least twenty days before the execution date," which was May 19, 2022. A.R.S. § 13–757(B). On May 18, 2022, Atwood completed and signed a form indicating his refusal to select an execution method. Under Arizona law, Atwood's failure to choose a method means that he will be executed by lethal injection. *Id*.

On May 19, 2022, Atwood filed his initial complaint in the instant case. He filed an amended complaint on May 27, 2022. Relevant here, Atwood asserts that his execution will violate the Eighth Amendment and the Americans with Disabilities Act (ADA) because he has a disability that makes it painful for him to lie flat on his back. *See* Dkt. 21, at 61–68 (Claims I–II). On May 20, 2022, this Court ordered Atwood to file a notice no later than May 24, 2022, indicating "whether and when he may file a motion for emergency injunctive relief." Dkt. 5, at 4. On May 24, Atwood filed a notice stating that he intended to file a motion for injunctive relief by May 26, 2022. Dkt. 9. Atwood filed his motion on that date, seeking injunctive relief on his Eighth Amendment/ADA claims.[2] Dkt. 16.

---

[2] Atwood's motion exceeds the 17-page limit allowed in Local Rule 7.2(e)(1). Nevertheless, in an effort to resolve this matter expeditiously, Defendants do not ask this Court to strike the motion.

## II. ATWOOD IS NOT ENTITLED TO INJUNCTIVE RELIEF.

"[A] preliminary injunction is an extraordinary remedy never awarded as of right." *Benisek*, 138 S. Ct. at 1943 (quotation marks omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Thus, even if a plaintiff can show a likelihood of success on the merits, "a preliminary injunction does not follow as a matter of course." *Benisek*, 138 S. Ct. at 1943. These principles apply "even in the context of an impending execution." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012); *see also Hill v. McDonough,* 547 U.S. 573, 583–84 (2006) ("Filing an action that can proceed under § 1983 does not entitle the complainant to an order staying an execution as a matter of course.").

Atwood asserts that he is entitled to injunctive relief on his Eighth Amendment and ADA claims, which allege that Arizona's execution protocol as applied to him will cause him to suffer severe pain. Dkt. 16, at 13–16. He asserts that his "longstanding degenerative spinal condition" causes pain when he lies flat on his back and that requiring him to lie flat on his back during the execution will violate his right to be free from "the unnecessary and wanton infliction of pain." *Id*. at 14 (quotation marks omitted).

Defendants do not dispute that Atwood has a condition that causes him pain when he lies flat on his back.[3] Because of this condition, they have provided him

---

[3] Atwood asserts that "he has repeatedly highlighted for [Defendants] the impossibility of proceeding under this protocol without violating the prohibition against Cruel and Unusual Punishments." Dkt. 16, at 15. But Atwood has taken no steps, prior to filing his complaint, to bring this matter to Defendants' attention or to ask ADCRR to accommodate his back issues during the execution. Nor has he inquired as to the specific procedures ADCRR will use in his execution. *Cf. Bucklew v. Precythe*, 139 S. Ct. 1112, 1131 (2019) ("Mr. Bucklew had ample opportunity to conduct discovery and develop a factual record concerning exactly
(continued ...)

3

with a specialized pillow that allows him to sleep on his back. Using this pillow, Atwood is able to lie on his back, as can be seen in the photographs attached as Exhibit A. ADCRR will provide this pillow for Atwood's use during the execution to alleviate the pain he would otherwise suffer.[4] Additionally, the table in the execution room is capable of being tilted. If necessary, ADCRR can use the table's tilt function to further alleviate any pain caused by Atwood lying on his back. Thus, Atwood is simply incorrect that ADCRR "plan[s] to restrain him to the execution table in a way that will be excruciating" for him. Dkt. 16, at 15.

### A. Atwood is not likely to succeed on his claims.

#### 1. Atwood is not likely to succeed on his Eighth Amendment claim.

To prevail on his claim that the execution method violates the Eighth Amendment, Atwood must "establish that the method presents a risk that is sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers." *Glossip v. Gross*, 576 U.S. 863, 877 (2015) (quotation marks and emphasis omitted). "[T]here must be a substantial risk of serious harm, an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment." *Id*. (quotation marks omitted). Atwood also "must identify an alternative that is "feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain." *Id*. (quotation and alteration marks omitted).

##### a. The ADCRR's procedures, as applied to Atwood, will not create a substantial risk of severe pain.

As explained above, ADCRR will provide Atwood with the same accommodation he now uses to prop himself up so that he may rest comfortably on

---
( ... continued)
what procedures the State planned to use.").

[4] If Atwood determines that his current pillow is not firm enough, ADCRR will provide a newer (and firmer) wedge pillow for use during his execution.

4

his back. Accordingly, Atwood cannot establish that Arizona's lethal injection protocol, as applied to him, will create a "substantial risk of severe pain," and he cannot prevail on his Eighth Amendment claim. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1130 (2019). Atwood will also be able to continue taking his pain medications, *see* Dkt. 16-1 at 18 (Department Order 710, section 8.2), and will have two opportunities to accept the offer of a mild sedative before the execution, *id*. at 21 (Department Order 710, sections 13.2.3 and 13.2.5).

> b. <u>Atwood has not identified an alternative procedure that will significantly reduce the risk of pain he will experience while using his specialized pillow.</u>

Even if Atwood can demonstrate he will still suffer some pain or discomfort while using the accommodations ADCRR will provide, he has not established any "feasible, readily implemented" alternative that will *significantly* reduce such pain. *Glossip*, 576 U.S. at 877 (quotation marks omitted). For an alternative method to be "readily implemented, the inmate's proposal must be sufficiently detailed to permit a finding that the State could carry it out relatively easily and reasonably quickly." *Bucklew*, 139 S. Ct. at 1129 (quotation marks omitted).

Atwood first suggests the use of nitrogen gas as an alternate method for his execution. Dkt. 16, at 15. He claims that this method "merely requires Defendants to procure readily available equipment, such as a gas mask and nitrogen cylinders." *Id*. While Atwood asserts that the equipment is "readily available," however, he identifies no suppliers who would be willing to provide the equipment for an execution. *See* https://theappeal.org/using-nitrogen-gas-for-executions-is-untested-and-poorly-understood-three-states-plan-to-do-it-anyway/ (Nitrogen hypoxia "has proved difficult to carry out because the agency has had trouble securing a device to deliver the nitrogen to prisoners…. The issue is companies/manufacturers won't

sell [states] the appropriate technology out of fear of backlash from anti-death penalty activists." (quotation marks omitted)).[5] In addition, Atwood has a substantial growth of facial hair that covers the lower portion of his face and extends to his chest. *See* Exhibit A. This facial hair would likely make it difficult, if not impossible, for a face mask to achieve an adequate seal. Atwood does not indicate whether it would be necessary for him to shave his beard (or if he would be willing to do so) prior to execution in order to ensure that the seal would be adequate.[6]

Moreover, the *Bucklew* court found that, because nitrogen hypoxia had never been used in an execution, the state did not violate the Constitution by refusing to adopt it. 139 S. Ct. at 1129–30. "[C]hoosing not to be the first to experiment with a new method of execution is a legitimate reason to reject it." *Id*. at 1130. Accordingly, Arizona's "refusal to adopt [Atwood's] proposed protocol could not 'constitute a violation of the Eighth Amendment.'" *Id*. (quoting *Baze v. Rees*, 553 U.S. 35, 57 (2008)). "The Eighth Amendment prohibits States from dredging up archaic cruel punishments or perhaps inventing new ones, but it does not compel a State to adopt 'untried and untested' (and thus unusual in the constitutional sense) methods of execution." *Id*. (quoting *Baze*, 553 U.S. at 41). Execution by nitrogen

---

[5] In his amended complaint, Atwood states that "[s]uitable nitrogen gas cylinders, regulators, and tubing can be readily purchased" from Airgas. *See* Dkt. 21, at 52 n.38. But "Airgas USA … told [reporters] that it would not supply [Oklahoma] with gas for executions." https://theappeal.org/using-nitrogen-gas-for-executions-is-untested-and-poorly-understood-three-states-plan-to-do-it-anyway/.

[6] Atwood does not assert that he is likely to prevail on his claim that nitrogen gas could be administered in Arizona's gas chamber. He explains in his amended complaint that nitrogen gas could be administered in the ADCRR's current gas chamber, but only after "drill[ing] holes in the gas chamber to permit the tubing [carrying the nitrogen gas] to enter the chamber." Dkt. 21, at 52, ¶ 189. Another hole would need to be drilled to allow leads to monitor Atwood's vital signs during the execution. *Id*. at ¶ 190. Drilling holes in the chamber would likely compromise the integrity of the chamber and render it useless regardless what type of gas is used.

gas remains "untried and untested," and therefore Atwood cannot demonstrate an Eighth Amendment violation by the ADCRR's refusal to implement it.

Atwood also posits execution by firing squad as a "readily implemented method."[7] Dkt. 16, at 16. He further asserts that the Supreme Court has "repeatedly confirmed" the constitutionality of execution by firing squad, but cites only the *Bucklew* Court's reference to an 1879 opinion finding execution by firing squad constitutional. *Id*. (citing *Bucklew*, 139 S. Ct. at 1123). Even if Atwood has demonstrated that this method is constitutional, he has not established that it is "readily implemented" by ADCRR. In particular, he does not identify a location where ADCRR could safely conduct such an execution. To the extent he suggests that the execution should take place in the current execution chamber, as his citation to Utah's procedures suggests, Atwood does not attempt to explain how to ensure the safety of the witnesses or the personnel carrying out the execution. *See id*. (citing Exhibit 12); *see Bucklew*, 139 S. Ct. at 1129 (observing that petitioner failed to explain "how the State might ensure the safety of the execution team"). Atwood has failed to establish that a firing squad is a feasible, readily implemented alternative to lethal injection.

Nor has Atwood established that either nitrogen gas or a firing squad would "significantly reduce a substantial risk of severe pain." *Bucklew*, 139 S. Ct. at 1130. As explained above, ADCRR will allow Atwood to use a specialized pillow so that he can lie at an angle on the execution table. Given that Atwood chooses to lie on his back in this position while resting, he has demonstrated that using the pillow greatly reduces any risk of significant pain. Atwood cannot demonstrate that he would experience *significantly* less pain if he is executed by nitrogen gas or by firing squad. Atwood has not demonstrated a likelihood that he can prevail on

---

[7] Atwood correctly observes that implementation of this method of execution would require amending Arizona's constitution. *See* Dkt. 16, at 16.

7

his Eighth Amendment claim, and this Court should deny his request for injunctive relief.

### 2. Atwood cannot demonstrate a likelihood of success on his ADA claim.

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

> To prove that a public program or service violated Title II of the ADA, [a plaintiff] must show that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.

*Updike v. Multnomah Cnty.*, 870 F.3d 939, 949 (9th Cir. 2017) (quotation marks omitted).

Atwood cannot prevail on his claim. First, assuming he is a "qualified individual with a disability," he has identified no "services, programs, or activities" he is being denied by reason of his disability. In his amended complaint, however, he alleges that he is being denied "an execution that is not unnecessarily painful."[8] Dkt. 21, at 67, ¶ 239. Even if an "unnecessarily painful" execution is a "service[], program[], or activit[y]" within the ADA's meaning, however, Defendants have not "excluded [Atwood] from participation" or otherwise discriminated against him, because they will provide a reasonable accommodation in the form of a pillow that will allow his upper body to be raised during the execution, thus alleviating his

---

[8] Atwood does not provide a citation for his claimed right to an execution that is not "unnecessarily painful," nor does he explain what amount of pain could be found "unnecessary." The Eighth Amendment prohibits an execution that creates "an unacceptable risk of severe pain." *Glossip*, 576 U.S. at 867. Atwood does not suggest that the ADA provides a different standard.

pain.⁹ *See Updike*, 870 F.3d at 951 ("A public entity may be liable for damages under … the ADA … if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." (quotation marks omitted)). Thus, Atwood is simply incorrect that "Defendants have moved for an execution warrant … that will force Mr. Atwood to be restrained supine on his back." Dkt. 16, at 18. He is also incorrect that the Defendants failed to consider any reasonable accommodations in seeking the execution warrant. *Id*.

### B. Atwood will not suffer irreparable harm without injunctive relief.

Even if a plaintiff can show a likelihood of success on the merits, "a preliminary injunction does not follow as a matter of course." *Benisek*, 138 S. Ct. at 1943. Rather, a court must also consider whether the movant has shown "that he is likely to suffer irreparable harm in the absence of preliminary relief…." *Id*. at 1944. Atwood contends that he "will suffer severe, needless pain, if he is strapped down supine" during the execution, and as a result he will suffer irreparable harm by the deprivation of his Eighth Amendment rights. Dkt. 16, at 20. But as explained above, Atwood will not be "strapped down supine," during the execution. Accordingly, he will not suffer the severe pain he fears, and this Court should deny injunctive relief.

### C. The balance of equities does not tip in Atwood's favor.

Before granting a preliminary injunction, this Court must also determine that the balance of equities tips in [Atwood's] favor." *Benisek*, 138 S. Ct. at 1944. Atwood contends that the "balance of equities overwhelmingly favors [him], as he is set to suffer completely unnecessary pain, which the State could easily alleviate

---

⁹ Atwood suggests as a reasonable accommodation that he could be "plac[ed] in different bodily positions." Dkt. 16, at 18. This is the accommodation the State intends to provide by allowing Atwood to use the pillow to elevate his upper body.

through different methods of execution." Dkt. 16, at 20. As has been established, however, the State will provide an accommodation to Atwood to alleviate his pain and therefore there is no need for an equitable remedy here. Moreover, while Atwood asserts that an injunction "would not harm or be inequitable to the State in any way," he ignores his own inequitable conduct and the State's interest in carrying out his sentence. *Id*.; *see Hill*, 547 U.S. at 584 ("[E]quity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts.").

"[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek*, 138 S. Ct. at 1944. Atwood has known for more than a year that the State was seeking a warrant for his execution. The Arizona Supreme Court issued the warrant on May 3, 2022, setting his execution for June 8, 2022. At no time before (or after) filing his complaint in this matter did Atwood make any attempt to seek a reasonable accommodation from the ADCRR to address the pain he asserts he will experience during the execution. Nor has Atwood made any inquiry to discover what specific procedures ADCRR would employ for his execution. Had he done so, ADCRR would have informed him of the accommodations indicated in this response, obviating the need for him to file a motion for preliminary injunction.

Instead, Atwood filed the instant complaint 19 days before his scheduled execution—17 days after the Arizona Supreme Court issued its warrant. He waited another 6 days (until 13 days before his execution) to file a motion for a preliminary injunction, doing so only after this Court ordered him to indicate whether he intended to file a such a motion. And rather than request the same reasonable accommodation he now uses to lie comfortably on his back, Atwood seeks a new method of execution that he knows cannot be accomplished by his June 8 execution date. Thus, Atwood's true goal seems to be *not* to minimize the pain he will experience during his execution, but to delay the execution indefinitely

by requesting alternative methods he knows the State is unable to provide absent significant changes to its execution protocol and to the state constitution.

Atwood has not acted equitably in seeking a preliminary injunction, and this Court should deny his request.

### D. The public interest will not be served by injunctive relief.

Finally, Atwood must show that "an injunction is in the public interest." *Benisek*, 138 S. Ct. at 1944. Atwood asserts that "granting preliminary relief would injure no public interest" because "[t]he State and the public have no particular interest in Mr. Atwood being killed on June 8, 2022" rather than another date. Dkt. 16, at 21. But "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a sentence." *Hill*, 547 U.S. at 584. In particular, Arizona has provided victims a constitutional right "to be free from intimidation, harassment, or abuse, throughout the criminal justice process" and to "a speedy trial or disposition and prompt and final conclusion of the case after the conviction and sentence." Ariz. Const. art. II, § 2.1(1), (10). Atwood's victims waited 30 years for Atwood to complete his appeals. Now that he has, this Court should consider their right (and the State's) to a speedy resolution of this already drawn-out case.

Denying Atwood's motion and allowing the execution to proceed on June 8, 2022, will violate none of Atwood's rights and will ensure the long-awaited conclusion to Atwood's kidnapping and murder of an 8-year-old girl almost 40 years ago.

### III. CONCLUSION.

Because the State will provide an accommodation to address Atwood's disability during his execution, this Court should deny Atwood's motion for temporary restraining order and/or preliminary injunction.

RESPECTFULLY SUBMITTED this 31st day of May, 2022.

                                    Mark Brnovich
                                    Attorney General

                                    Jeffrey L. Sparks
                                    Deputy Solicitor General/
                                    Section Chief of Capital Litigation

                                    <u>/s/ Laura P. Chiasson</u>
                                    Assistant Attorney General
                                    Attorneys for Defendants

I hereby certify that on May 31, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Joseph J. Perkovich
Phillips Black, Inc.
P.O. Box 4544
New York, NY 10163
j.perkovich@phillipsblack.org

Amy P. Knight
Knight Law Firm, PC
3849 E. Broadway Blvd., #288
Tucson, AZ 85716-5407
amy@amyknightlaw.com

David A. Lane
Reid Allison
Killmer, Lane & Newman, LLP
1543 Champa Street, Suite 400
Denver, Colorado 80202
dlane@kln-law.com
rallison@kln-law.com

Attorneys for Plaintiff

/s/L. Fielding

SAHUGR490FEJRA