JOSEPH J. PERKOVICH, ESQ.
NY Bar No. 4481776
Phillips Black, Inc.
PO Box 4544
New York, NY 10163
Tel: (212) 400-1660
j.perkovich@phillipsblack.org

AMY P. KNIGHT, ESQ.
AZ Bar No. 031374
Knight Law Firm, PC
3849 E Broadway Blvd, #288
Tucson, AZ 85716-5407
Tel: (520) 878-8849
amy@amyknightlaw.com

DAVID A. LANE, ESQ.
CO Bar No. 16422
Killmer, Lane & Newman, LLP
1543 Champa Street, Suite 400
Denver, Colorado   80202
Tel:  (303) 571-1000
dlane@kln-law.com

REID ALLISON, ESQ.
CO Bar No. 52754
Killmer, Lane & Newman, LLP
1543 Champa Street, Suite 400
Denver, Colorado   80202
Tel:  (303) 571-1000
rallison@kln-law.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

.

| | |
|---|---|
| Frank Jarvis Atwood, | ) No. CV-22-00860-PHX-MTL (JZB) |
|           Plaintiff, | ) |
| | ) |
|    v. | ) |
| | ) **SUPPLEMENTAL LIST OF** |
| David Shinn, Director, Arizona | ) **EXHIBITS TO REPLY TO** |
| Department of Corrections, Rehabilitation | ) **PLAINTIFF'S MOTION FOR** |
| & Reentry; James Kimble, Warden, | ) **TEMPORARY RESTRAINING** |
| ASPC-Eyman; Jeff Van Winkle, Warden, | ) **ORDER AND/OR PRELIMINARY** |
| ASPC-Florence; Lance Hetmer, Assistant | ) **INJUNCTION** |
| Director for Prison Operations, Arizona | ) |
| Department of Corrections, Rehabilitation | ) |
| & Reentry; Mark Brnovich, Attorney | ) |
| General of Arizona; John Doe, Arizona- | ) **(ORAL ARGUMENT REQUESTED)** |
| licensed Pharmacist, | ) |
| | ) **This is a capital case.** |
|           Defendants. | ) **EXECUTION WARRANT ISSUED** |
| | ) **FOR JUNE 8, 2022, 10:00 A.M.** |

## SUPPLEMENTAL EXHIBIT LIST

Exhibit 13    Informal (4/14/22)

Exhibit 14    Emergency Grievance (4/14/22)

Exhibit 15    Appeal (5/1/22)

Exhibit 16    Unprocessed Grievance (5/5/22)

Exhibit 17    Unprocessed Appeal (5/5/22)

.

Exhibit 13



**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Informal Complaint Resolution**

*Complaints are limited to one page and one issue.*

*Please print all information.*

22-038789

| INMATE NAME *(Last, First M.I.) (Please print)* | ADC NUMBER | INSTITUTION/UNIT | DATE *(mm/dd/yyyy)* |
|---|---|---|---|
| Atwood, Frank J. | 062887 | ASPC-E/Browning | 04-14-2022 |

| TO | LOCATION |
|---|---|
| COIII Monsibais | Browning Unit |

State briefly but completely the problem on which you desire assistance. Provide as many details as possible.

The AZ AG filed a motion for an execution warrant on me, however, as currently constructed, the Execution Protocol (ADCRR Dept. Order 710) violates my First, Sixth, Eighth, Fourteenth Amendment rights. To wit:

Spinal degeneration has left me requiring a wheelchair in & out of my cell, also, I am unable to lie flat on my back. The Protocol requires restraint to the execution table, which will inflict upon me outrageously severe pain - if a femoral line is used, uncontrolled movement can cause arterial, bladder, other organ laceration. No qualifications are listed for the Director or IV, medical, special ops, with Escort Teams, all of whom must make medical, etc. decisions - they need not be licensed in AZ & the Protocol cites no requirements for necessary emerg. equipment; nor the presence of medical professionals throughout the execution process. Further, my atty. is prevented from communicating by phone during the execution & reasoning for closing interm. curtains or witt. removal is absent from the Protocol. These facts evidence my execution would transpire under unconstitutional conditions.

Resolution= If a lethal injection, use peripheral catheters while I am seated in my wheelchair; never employ a femoral central line; require specific qualifications for each execution participant; detail all medical equipment & professionals required to be present throughout the execution, including provisions for medical emergencies; issue guidelines & reasons for curtain closure and witness removal; allow my atty. constant telephone access.

Thank You!

| INMATE SIGNATURE | | DATE *(mm/dd/yyyy)* |
|---|---|---|
| | Entered Into ACIS on Date: 4.18.22 | 04-14-2022 |

Have you discussed this with institution staff?  ☒ Yes  ☐ No

If yes, give the staff member name: ADCRR Counsel

Distribution:  INITIAL: White and Canary or Copies – Grievance Coordinator; Pink or Copy – Inmate
FINAL: White – Inmate; Canary – Grievance Coordinator File

802-11
6/25/14

Exhibit 14

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Grievance**

*Entered Into ACIS on Date: 5/5/22*

| RECEIVED BY |
|---|
| ABRAMS |
| TITLE |
| CO II |

| BADGE NUMBER | DATE *(mm/dd/yyyy)* |
|---|---|
| 6131 | 14APR22 |

Note: You may appeal the Grievance Coordinator's decision to the Warden/Deputy Warden/Administrator by filing form 802-3, within 10 calendar days of receipt of this notice

| INMATE NAME *(Last, First M.I.) (Please print)* | ADC NUMBER | DATE *(mm/dd/yyyy)* |
|---|---|---|
| Atwood, Frank J. | 062887 | 04-14-2022 |

| INSTITUTION/FACILITY | CASE NUMBER |
|---|---|
| ASPC-E / Browning | 22-040386 |

**TO: GRIEVANCE COORDINATOR**    Emergency

**Description of Grievance** *(To be completed by the Inmate)* Dept. policy permits the submittal of an emergency grievance if health or welfare is in imminent danger. The below facts evidence precisely this state of reality and enable this emergency grievance on unconstitutional executions facts:

1. On Thurs 7 Apr. 2022 the Atty. Gen. filed a motion for a warrant to execute me.

2. ADCRR Dept. Order 710 (Execution Procedures) & Attchmt. D thereto states that for a lethal injection execution, the I/m will be secured to the execution table by restraints (Attch. D p.41, 53).

3. I have a longstanding spinal degeneration condition that causes me severe pain. I have been essentially confined to a wheelchair for years. Inadequate treatment, or mistreatment, of my spinal cord & related issues during my imprisonment has substantially worsened my condition. As a result, for yrs. I've used my wheelchair

**Proposed Resolution** *(What informal attempts have been made to resolve the problem? What action(s) would resolve the problem?)* [cont'd on supp't] Contacted ADCRR counsel for resolution but no resolution. To resolve please seat me in my wheelchair if a lethal injection execution & never employ a femoral line; require set qualifications for each participant; ensure lists for reqd. medical professionals & equipment are constructed & followed; establish specific guidelines for atty. use of phone prior to & during execution; curtain is w/in rm. closure, w/in removal (reasons). Thank you!

| INMATE'S SIGNATURE | DATE *(mm/dd/yyyy)* 4/14/22 | GRIEVANCE COORDINATOR'S | DATE *(mm/dd/yyyy)* |
|---|---|---|---|

| Action taken by _____ | Documentation of Resolution or Attempts at Resolution. |
|---|---|
| — Unprocessed — | |

| STAFF MEMBER'S SIGNATURE | BADGE NUMBER | DATE *(mm/dd/yyyy)* 5/5/22 |
|---|---|---|

DISTRIBUTION:   INITIAL:   White and Canary or Copies – Grievance Coordinator; Pink or Copy - Inmate
FINAL: White – Inmate; Canary – Grievance File

802-1
12/12/13

ARIZONA DEPARTMENT OF CORRECTIONS

Inmate Grievance - GF Supplement

+2+

| Inmate Name *(Last, First M.I.)* | ADC Number | Institution/Facility | Case Number |
|---|---|---|---|
| Atwood, Frank J. | 062887 | ASPC-E/Browning | |

in my cell & for all movement outside of my cell.

4. My degenerative spine causes severe pain when attempting to lie on my back. Being restrained to the execution table will inflict maximum pain on me, thus, application of the Execution Protocol to me would impose unimaginable pain & violates the 8th Amendment to the US Const. prohibition against cruel & unusual punishment & the 14th Amdmt's Due Process Clause.

5. I request the ADCRR modify the application of the Execution Protocol so that, if I am to be executed by lethal injection, I will not be placed on the execution table. I request the ADCRR to administer any intravenous lines & lethal injection while I am seated in my wheelchair.

6. Dept. Order 710, pgs 6-7 @ 3.2.5, concerns the "Intravenous Team Members (IV Team). 3.2.5.4 states: "The IV team shall be responsible for inserting either peripheral IV catheters or a central femoral line as determined by the Director [of the ADCRR] acting upon the recommendation of the IV TEAM Leader..... A central femoral venous line shall not be used unless the person placing the line is currently qualified by experience, training, certification or licensure within the United States to place a central femoral line."

7. Attchmt. D @ p. 5, E1 states: "The Director acting upon the advice of the IV Team Leader shall determine the catheter sites. A femoral central line shall only be used if the person inserting the line is currently qualified by experience, training, certification or licensure within the United States to insert a femoral central line. The IV Team members shall insert a primary IV catheter and a backup IV catheter."

8. Because the insertion of a femoral central line would require that I lie flat with my hips extended, a position that is not possible for me without causing maximum pain, a femoral central line cannot be used under any circumstances. In addition, because of such infliction of pain during any process to insert a femoral line, I would be highly likely to move inadvertently & without my control. Such movement would pose a serious risk that the attempted femoral access could lacerate my femoral artery, bladder, bowel, or other internal organs. Thus, under no circumstances can the IV team attempt to insert a femoral line. There is no reason presently to expect a peripheral IV catheter not to establish a sufficient venous line for carrying out a lethal injection. If inserting a peripheral line is determined to be not feasible, alternatives such as an internal jugular or subclavian ultrasound guided central venous catheter insertion should be used because a femoral line would cause serious risk of harm and, under any circumstances, extreme pain, violating the 8th & 14th Amendments.

9. The term "medical team" is used in 3 places w/in Attchmt. E (* Lethal Gas*) to the execution Protocol. This term appears not to overlap w/the discussion of the IV Team w/in the Protocol (above), or the Special Operations Team (below). The term is not defined nor is it specified in Attchmt. E, let alone anywhere else in the Execution Protocol. Attchmt. E does not identify the composition of such a team, any medical qualifications for such a team, nor the role team members play in relation to the execution procedures. There are references to "[a] member of the medical team shall monitor the inmate and EKG and shall advise the Director when the inmate has expired, providing the corresponding time of death." Attchmt. E, p. 3 @ 19.

| Signature | Date 4/4/22 | [cont'd] |
|---|---|---|

INITIAL DISTRIBUTION - Committee Recommendation - All copies to Grievance Advisory Committee
FINAL DISTRIBUTION - White and Pink - Inmate, Canary - Grievance File

INITIAL DISTRIBUTION - GF Supplement - White and Canary - Grievance Coordinator, Pink - Inmate
FINAL DISTRIBUTION - White - Inmate, Canary - Grievance File

802-7
7/13/09

ARIZONA DEPARTMENT OF CORRECTIONS

Inmate Grievance - GF Supplement

| Inmate Name *(Last, First M.I.)* | ADC Number | Institution/Facility | Case Number |
|---|---|---|---|
| Atwood, Frank J. | 062887 | ASPC-E /Browning | |

10. In contrast to lethal gas, the Execution Protocol does not contemplate any form of medical team w/ respect to a lethal injection execution.

11. As noted above regarding the IV Team, the Execution Protocol fails to specify the role of any medically trained individuals for carrying out either a lethal injection or lethal gas execution, let alone any qualifications & expertise of such professionals.

12. The Protocol does not specify the nature of qualifications, eg. "experience, training, certification or licensure" for members of the IV Team. This failure to articulate basic professional qualifications & background scrutiny leaves these essential matters to the Dept. & the failure to make proof of such qualifications & background available for my evaluation violates my rts under the 1st, 6th, 8th, & 14th Amendments.

13. The Protocol requires executions to take place in Florence, AZ but does not require the IV Team members (or any other medically qualified personnel) to be licensed in AZ. Instead, the Protocol refers to licensure within the United States." Not ensuring that the licensure of those responsible for the medical-related elements of the execution are licensed in the place where this execution shall take place violates violates my rts under the 1st, 6th, 8th & 14th Amdts.

14. Under the protocol, p.6 @ 3.2.5.3, the Director is responsible for designating the IV Team Leader. This role of IV Team Leader has extensive, critical responsibility for execution performance of the execution under this protocol, repeated in specifications of his/her duties as do other IV Team members. The Protocol establishes no minimum qualifications or other criteria for any individual to be designated as eligible for the IV Team, violating my 1st, 6th, 8th, & 14th Amdnt rights.

15. The Protocol identifies the Special Operations Team as responsible for administering the chemicals for a lethal injection and is specified to consist of at least 5 people who are selected by the Assistant Director for Prison Operations with the documented approval of the Director." Protocol p.6 @3.2.1.2. The Protocol does not establish basic qualifications or background requirements for such qualifications violating my 1st, 6th, 8th, & 14th Amdnt rights.

16. The Protocol requires the Director to designate IV Team members & empowers the Director to take certain critical medically-based decisions, such as whether to "instruct the Special Operations Team to administer an additional dose of the lethal chemicals followed by the sterile saline solution flush. This may be administered via the primary or backup IV catheter, as determined following consultation with the IV Team." Attch. D, p.6 @6. The Director is neither required nor currently possesses medical qualifications to make such determinations, violating 1st, 6th, 8th, 14th Amdnts.

17. Under the Protocol, the Director is not required, nor presently is known to possess any medical qualifications, let alone sufficient qualifications & experience to have a meaningful opinion on whether the procedures contemplated under the Protocol are proceeding adequately. The Protocol's repeated provisions of medically-related decision making authority to the Director violates my 1st, 6th, 8th & 14th Amdnt rights.

18. Competent, experienced medical professionals are required to ensure a competently performed execution of whichever method, injection or gas. Failure to set basic requirements and make the information & records sufficient for determining whether such requirements are met violates my rts. under the 1st, 6th, 8th, 14th Amdnts.

19. The Protocol does not include a list of equipment to be used in the medically-related procedures concerning a lethal injection. This failure to enumerate the medical equipment nec. for inserting & maintaining the IV line and administering the chemicals for my execution precludes the examination of the Protocol's requirements in relation to performing a constitutional execution, thusly violating my 1st, 6th, 8th, 14th Amdnt rights.

20. The Protocol's "Additional Operations Requirements" pp. 16-18 @ B.5.1.3 provides if I am to be executed I may designate one attorney "to witness the execution" and "temporary office space will be provided for [my counsel] in the Administration

| Signature | Date 4/14/22 | [contd.] |
|---|---|---|

INITIAL DISTRIBUTION - Committee Recommendation - All copies to Grievance Advisory Committee
FINAL DISTRIBUTION - White and Pink - Inmate, Canary - Grievance File

INITIAL DISTRIBUTION - GF Supplement - White and Canary - Grievance Coordinator, Pink - Inmate
FINAL DISTRIBUTION - White - Inmate, Canary - Grievance File

802-7
7/13/09

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Grievance - GF Supplement**

⌐4⌐

| Inmate Name (Last, First M.I.) | ADC Number | Institution/Facility | Case Number |
|---|---|---|---|
| Atwood, Frank J. | 062887 | ASPC-E/Browning | |

Building the scheduled day of execution."

21. The protocol does not define the term "exigent circumstances," which it uses regarding the mobile phone of the atty who would be permitted in the witness room for my execution: "While the attorney witness is in the witness room, a member of the "witness Escort Team" shall hold one mobile phone designated by the atty., to be made available to the atty. in exigent circumstances. The mobile phone may not be used inside the witness room." As a result of this language, my atty. will not have the ability to use his professional judgmt in communicating w/my legal team, the cts., or a medical expert.

22. The ability of my atty. to at all communicate will be dictated by an unspecified witness Escort Team member. In fact, the protocol does not define "witness Escort Team" or "Teams" although the latter term appears once, under the heading of Technical Operations Requirements (p.16 @ 13.5.1). The protocol provides no indication of the qualifications, background, training, or anything else concerning concerning criteria for selection to this team & their actual responsibilities & tasks. Thus, my ability to access my counsel & access cts., if a potentially the most critical need to do so, will be dictated, under this protocol, by an unspecified person sering on an unidentified witness Escort Team or Teams.

23. ADCRR must allow my designated attorney to maintain control of his phone so that he may communicate w/the rest of my legal team, cts., & medical experts in the event that such communication, in my atty.'s professional judgmt, is necessary. Denial of that ability for my atty. to use the phone at his discretion violates my 1st, 6th, & 14th Amdmt rts.

24. Attchmt D, pg 5 @ 5 (also, 13.5.1-2), gives the Director the authority to "direct the curtains to the unit rim be closed and if nec. for witse to be removed from the facility only in the event of a legitimate penological objective which would merit such closure and/or removal."

25. The protocol fails to identify any penological objtv. that could be met by drawing those curtains to a close during the execution. Further, no penological objtv could supercede the cnstr. rts. & obligations concerning the execution, including my dying a dignified death under this protocol. To the extent the protocol authorizes the Director to close the curtains, it violates 1st, 6th, 8th, 14th Amdmt rts.

26. Attchmt D, p.6 @ Sec. G, "contingency procedure," requires that an AED "will be readily available on site in the event that the I/m goes into cardiac arrest at any time prior to dispensing the chemicals. Trained medical staff shall make every effort to revive the I/m should this occur." It is foreseeable that resuscitation might be nec. after some amt of compounded pentobarbital to be used in a lethal injection execution. The execution could be halted for various reasons, incldng because a stay is entered during the process because the execution is not going as planned, as occurred the last time ADC conducted an execution in 2014.

27. The protocol does not adequately anticipate the potential need to resuscitate me from an overdosing of pentobarbital. Personnel adequately trained for such emergency care are not designated in the protocol, only unspecified "[t]rained medical personnel and emergency transportation." The foreseeable range of basic equipmt. nec. for such emergency care-pentobarbital inhibitcation is not set forth in the protocol. The protocol does not specify that emerg. care providers shall be positioned w/in the facility containing the execution chamber, rather it only provides that such "personnel and emergency transportation... shall be available in proximity."

28. Further, the contingency procedure expressly concerns only an emergency that "aris [es] at any time before the order to proceed with the execution is issued by the Director" or "[i]f the Director determines to stand down [after commencement of the procedure]." Attch. D, @ G.2, G.3. The protocol does not recognize that the Director may obtain a court order or executive order from the Governor that would require the execution process to cease and for me to be resuscitated. The Department's failure to prepare for these foreseeable occurrences violates the 8th & 14th Amdmts.

| Signature | Date 4/14/22 | [End] |
|---|---|---|

INITIAL DISTRIBUTION - Committee Recommendation - All copies to Grievance Advisory Committee
FINAL DISTRIBUTION - White and Pink - Inmate, Canary - Grievance File

INITIAL DISTRIBUTION - GF Supplement - White and Canary - Grievance Coordinator, Pink - Inmate
FINAL DISTRIBUTION - White - Inmate, Canary - Grievance File

802-7
7/13/09

Exhibit 15

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Inmate Grievance Appeal**    *Emergency*    (To be completed by staff member initially receiving appeal)

The inmate may appeal the Warden's, Deputy Warden's or Administrator's decision to the Director by requesting the appeal on this form.

Received by: Herron, P
Title: CO II
Badge #: 1828
Date: 5-1-22  (320hrs)

*Entered Into ACIS on Date: 5/5/22*

**PLEASE PRINT**

Inmate's Name (Last, First, M.I.): Atwood, Frank J.
ADC No.: 062887
Date: 05-01-2022

Institution: ASPC-E/Browning
Case Number: 22-040386

TO: Director Shinn

I am appealing the decision of __Non-COIV Brief Response__ for the following reasons:

An emergency grievance was lodged (attached) on 4/14/22, however, COIV Brief has refused to timely answer so consequent to certain injury/death I am proceeding to the next level. As detailed in the grievance, ADCRR deviates from required protocol and I request: if lethal injection not being secured on a table and no use of a femoral line, no closure of curtains or removal of witness during execution, continual unobstructed telephone use by my lawyer throughout execution, qualifications (esp. medical) of each participant of the execution. Also, all other needs not currently identified.

Thank You!

Inmate's Signature
Date: 5/1/22
Grievance Coordinator's Signature
Date

Response To Inmate By:
Location

*— Unprocessed —*

Staff Signature: COIV Brier
Date: 5/5/22

DISTRIBUTION:
INITIAL:  White & Canary - Grievance Coordinator
          Pink - Inmate
FINAL:    White - Inmate
          Canary - Grievance File

802-3
7/13/09

Exhibit 16



# Inmate Grievance/Informal Response Notice
## Non-Medical

**Inmate Name:** FRANK ATWOOD

**ADC#:** 62887

**Prison/Unit:** EYMAN/EYMAN BROWNING

**Bldg/Bed:** A27 WG3G015B

## Case #:22-040386

## Informal Complaint

**Type:** Informal Response

**Date Received:** 05/05/2022 09:46 AM

**Response Author:** ROBERT BRIER

**Responded On:** 05/05/2022 09:48:15 AM

**Decision:**

## Case Details

**Case Number:** 22-040386

**Grievance Status:** Unprocessed

## Case Data

**Prison of Complaint:** EYMAN

**Opened Date:** 05/05/2022 09:46 AM

**Grievance Category:** Department Order/Institution Orders

**Unit of Complaint:** EYMAN BROWNING

**Grievance Stage:** Informal Submitted

## Informal Grievance Response

**Grievance Date:** 05/05/2022 12:00:00 AM

**Response Due:** 05/26/2022 09:47 AM

**Issue:** Execution #1

**Responder:** ROBERT BRIER

**Response:** This grievance is being unprocessed due to it falling under the category of a "Judicial Proceeding or Decisions of the Courts" and does not qualify as a Emergency Grievance in accordance to the ADCRR 802 policy. You also have multiple issues listed on your grievance which is also in violation of ADCRR 802 policy. You must use the Informal resolution prior to filing a Formal Grievance and you must have one issue that pertains to ADCRR policy and not Judicial Proceedings or a decision of the Courts.

☑ Unprocessed

**Reason(s) not processed:**
Judicial Proceeding or Decisions of the Courts

**Officer's Name:** BRIER, ROBERT J

**Notice:** If you are dissatisfied with the Informal Complaint Response, you may file a formal grievance (form 802-1 Inmate Grievance, and/or form 802-7 GF Supplement) within five (5) workdays from receipt of the above response to the Grievance Coordinator by:
• Placing a single complaint on a single inmate Grievance form.

   **NOTE:** If multiple unrelated issues are on a single form or if a duplicate complaint is filed, the grievance shall be rejected and returned unprocessed.

Exhibit 17

# ARIZONA DEPARTMENT OF CORRECTIONS, REHABILITATION AND REENTRY
## ARIZONA STATE PRISON COMPLEX
### EYMAN / BROWNING UNIT

TO:      **Atwood, Frank**    ADC #**062887**    LOC: **3-G-15**

FROM:    R. Brier, Correctional Officer IV – Grievance Coordinator

Date:    May 5, 2022

SUBJECT:  Unprocessed Inmate Grievance Appeal#22-040387

The Inmate Grievance you submitted does not constitute a grievance. This is not a response to your Inmate Grievance. Your Inmate Grievance is being returned unprocessed because you failed to follow the grievance procedure per Policy as notated below:

(  )    You did not provide proof of submitting the Informal Resolution to your assigned COIII.

(  )    You did not submit the Informal Resolution 802-11 within 10 working days of the action that caused the complaint and no proof of you Informal complaint can be found within ACIS.

(  )    You are past time frames (5 working days) from the date you received your assigned COIII response to your informal for filing a grievance. Your due dates were between.  You filed your grievance on.

(  )    You are past the time frames (5 working days) for filing an appeal. Your due dates were between.  You filed your grievance on.

(  )    You failed to fill out your grievance form properly.

(  )    Used incorrect forms/have used the forms incorrectly.

(  )    The grievance is repetitive.

(  )    You did not provide original copies of documentation essential to the resolution (i.e. Inmate letter, COIII inmate letter response to informal resolution, property forms, store receipts, etc.).

(  )    Inmates shall, in writing, specify what attempts were made to resolve the complaint (i.e.: the names of any staff members contacted, how the inmate was harmed, the reasons why the complaint remains unresolved, what would resolve the complaint, etc.).

(  )    Grievance contains more than one complaint. Only one complaint per grievance allowed.

(  )    You have been previously served with a letter that you have abused the Inmate Grievance System and that any future grievances will be assigned a number and returned with no answer and will not be subject to appeal.

(  )    You may only use the grievance process for the following issues: property, staff, visitation, mail, food service, institutional procedures, Department written Instructions, programs access, health care, religion and conditions of confinement.

(  )    Computation issues shall be addressed first by submitting an inmate letter to the inmate's assigned Institution Offender Information Unit.

(  )    Inmates may not use the inmate grievance system for classification, discipline issues, or any other system that has its own unique appeal process.

**(X)    Other: This Appeal is being unprocessed at this time. This is due to grievance #22-040387 being unprocessed for repeating issues addressed in grievance #22-040386 which was also unprocessed for falling under the category of a "Judicial Proceeding or Decisions of the Courts" and does not qualify as an Emergency Grievance in accordance to the ADCRR 802 policy. You must use the Informal Resolution process prior to filing a Formal Grievance.**

NOTE:   All original time frames still apply. You must submit grievances per policy D.O. 802 (December 19, 2012). For Grievance paperwork dated 04/18/2022 .