**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frank Jarvis Atwood, | No. CV-22-00860-PHX-MTL (JZB) |
| Plaintiff, | **ORDER** |
| v. | |
| David Shinn, et al., | |
| Defendants. | |

Plaintiff Frank Atwood is scheduled to be executed on Wednesday June 8, 2022. On May 19, 2022, he sued various Arizona Department of Corrections, Rehabilitation, and Reentry ("ADCRR") officials and Arizona Attorney General Mark Brnovich challenging aspects of ADCRR's Execution Protocol. On May 26, 2022, Plaintiff filed a Motion for Preliminary Injunction seeking an Order "prohibiting Defendants . . . from executing [Plaintiff] according to [ADCRR's] Execution Procedures . . . until such time as Defendants can assure this Court that [Plaintiff's] execution would be in compliance with the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution." (Doc. 16 at 22). Briefing on the motion was completed on Thursday June 2, 2022, and the Court held a Preliminary Injunction hearing on Friday June 3, 2022 at 2:00 p.m.[1]

In the meantime, Plaintiff also filed a motion to sever Counts VI and VII of his First Amended Complaint—challenges to Arizona's designation of hydrogen cyanide as the gas

---

[1] The Court notes that at the conclusion of the preliminary injunction hearing, Plaintiff's counsel requested a continuation of the hearing into the weekend. As the Court explained, Plaintiff had abundant time in the days leading up to the hearing to indicate that additional time might be necessary yet failed to do so.

to be used in a lethal gas execution—because those claims did not implicate Defendant John Doe, the pharmacist preparing the lethal injection drugs to be used in Plaintiff's execution, whose identity is unknown to Plaintiff. (Doc. 25). Because Defendants maintain Plaintiff will be executed by lethal injection, the Court directed Plaintiff to show cause why those claims should not be dismissed for lack of standing. (Doc. 31). Plaintiff responded to the Order to Show Cause. (Doc. 40).

After considering the parties' briefing, testimony, and evidence, the Court will deny the Motion for Preliminary Injunction, dismiss Counts VI and VII, and enter judgment on those claims.

**I.    Background**

In his First Amended Complaint, Plaintiff alleges he is wheelchair bound from a degenerative spinal disease and experiences "intense and profoundly debilitating pain along his spine because of chronic degeneration of vertebral bodies" that have "caused multiple compressions of the nerve roots as they pass from the spinal cord to the arms and legs," which "has resulted in permanent damage that manifests as profound weakness and unremitting pain." (Doc. 21 at 8). To minimize the pain Plaintiff experiences, he maintains a seated posture in his wheelchair and partially reclines when "attempting to sleep." Plaintiff maintains that "[l]ying flat on his back exacerbates his conditions, causing maximum pain." (*Id.*). For these reasons, Plaintiff alleges ADCRR's lethal injection protocol would subject him to significant pain not necessary to accomplish his execution. (*Id.* at 9). Specifically, Plaintiff alleges that a review of logs from Arizona's 14 most recent executions reflects that prisoners are secured on the execution table for an average of 44 minutes prior to the administration of lethal drugs. (*Id.* at 10). Because of Plaintiff's spinal condition, he alleges that would cause him excruciating and unnecessary pain.

Plaintiff also asserts that ADCRR's Execution Protocol requires that lethal injection drugs have a "beyond use date" ("BUD") after the date of the execution and authorizes prisoners subject to a warrant of execution to request and receive a "quantitative analysis" about the drugs to be used in an execution. (*Id.* at 16). Plaintiff alleges that Defendants

have refused to provide this information or verify the pentobarbital to be used in Plaintiff's execution has an appropriate BUD.  Additionally, Plaintiff alleges the quantitative analysis disclosed in conjunction with Clarence Dixon's execution did not meet United States Pharmacopeia standards.  (*Id.* at 20-25).  With respect to the option to be executed by lethal gas, Plaintiff alleges Defendants' specification of intention to use hydrogen cyanide as its lethal gas was intended to cause gratuitous pain.  (*Id.* at 18).

Plaintiff presents the following claims for relief: ADCRR's lethal injection procedures as applied to Plaintiff violate Plaintiff's Eighth Amendment, Americans with Disabilities Act (ADA), and Rehabilitation Act (RA) rights (Counts I, II, and III); ADCRR is discriminating against Plaintiff because of his disability in violation of the Fourteenth Amendment's Equal Protection Clause (Count IV); ADCRR's refusal to abide by its own Execution Protocol by failing to provide a BUD and appropriate quantitative analysis for the pentobarbital it intends to use during Plaintiff's execution violates his procedural due process rights under the Fourteenth Amendment (Count V); and ADCRR's election to use cyanide gas violates Plaintiff's Eighth and Fourteenth Amendment rights (Counts VI and VII).  Plaintiff also alleges ADCRR's execution protocols violate Plaintiff's right to access the courts under the Fourteenth Amendment and statutory right to counsel under 18 U.S.C. § 3599 (Counts VIII and IX); and the potential for pentobarbital intoxication, should the execution be interrupted or suspended, violates Plaintiff's Eighth and Fourteenth Amendment rights (Count X).

In his motion for injunctive relief, Plaintiff presents background facts regarding his spinal condition, anticipated difficulties with IV insertion based on prior executions, inadequacy of the lethal injection drugs Defendants intend to use to execute Plaintiff, and Defendants' improper designation of hydrogen cyanide as the lethal gas to be used in its executions. (Doc. 21).

In contrast, however, the motion for injunctive relief only squarely argues Plaintiff's likelihood of success on the merits of his claims in Counts I, II, and III.  In the argument section of his motion, Plaintiff does not discuss the BUD for the pentobarbital or identify

any caselaw that supports his BUD due process claim. Plaintiff's motion discusses nitrogen gas, but only as an alternative method of execution as required by *Glossip v. Gross*, 576 U.S. 863 (2015).

Against this backdrop, Defendants responded to the motion for injunctive relief, and indicated that Plaintiff would be provided a medical wedge during the execution to alleviate the pain he would otherwise suffer due to his spinal condition. Defendants further argued that the table in the execution room is capable of being tilted to further alleviate any pain Plaintiff might experience while lying on his back.

In his reply, Plaintiff argued Defendants "ignore the central justification for an injunction," namely, "relief in order to prevent Defendants from using inadequately tested, inadequately vetted high-risk compounded drugs for his lethal injection." (Doc. 35 at 3). As to Plaintiff's claim concerning his spinal condition, he replies that Defendants' accommodations are not sufficient to alleviate his pain.

The Court permitted Defendants to file a sur-reply, which explained why they only addressed Plaintiff's Eighth Amendment claim related to his spinal condition and not the drugs to be used during his execution. (Doc. 43).

Because of the confusion surrounding the precise scope of the relief Plaintiff was seeking, the Court began the evidentiary hearing by asking Plaintiff to explain the parameters of his request for injunctive relief. Plaintiff explained that the motion for injunctive relief was filed as an "umbrella" motion intended to encompass all the claims alleged in the First Amended Complaint. (June 3, 2022 Preliminary Injunction Hearing Transcript at 7:9-11). As noted, however, the motion only addressed the *Winter* factors as to Plaintiff's claims regarding his spinal condition and how that condition would result in substantial pain during a lethal injection execution if he was compelled to lie on his back. As a result, the Court had no briefing on any of Plaintiff's other claims, including those regarding the propriety of the pentobarbital to be used or the reliability of the BUD ascribed to it. Further, the Court has no briefing regarding how any deviations from ADCRR's Execution Protocol might implicate a cognizable liberty interest under the Fourteenth

Amendment. Not only is the Court unaware of any authority which authorizes the issuance of an injunction in this way, this limited record greatly impedes the Court's ability to meaningfully consider Plaintiff's claims and evidence. Nevertheless, because of the exigencies of the situation, the Court permitted Plaintiff to present testimony during the hearing as to claims other than those related to his spinal condition.

The Court will address the claims Plaintiff presented during the preliminary injunction hearing. The claims appear to fall into three main categories: (1) Plaintiff's claim that a lethal injection execution pursuant to the Execution Protocol will violate Plaintiff's Eighth Amendment and ADA rights because of his serious spinal condition; (2) Plaintiff's claim that Defendants' failure to perform a quantitative analysis of the pentobarbital violates his due process and Eighth Amendment rights; and (3) Plaintiff's claim that Defendants' designation of hydrogen cyanide gas for a lethal gas execution violates his Eighth and Fourteenth Amendment rights.[2]

**II.     Standard for Injunctive Relief**

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right").

A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to

---

[2] Plaintiff did not present evidence regarding his claims that Defendants are discriminating against Plaintiff based on his disability in violation of the Fourteenth Amendment (Count IV), that Plaintiff may experience a denial of access to the courts and of access to counsel during his execution in violation of 18 U.S.C. § 3599 and the Fourteenth Amendment (Counts VIII and IX), and that the potential for pentobarbital intoxication should the execution be interrupted or suspended violates Plaintiff's Eighth and Fourteenth Amendment rights (Count X). The Court, therefore, will not address those claims.

- 5 -

the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this serious questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072. When the government opposes a preliminary injunction,"[t]he third and fourth factors of the preliminary-injunction test— balance of equities and public interest—merge into one inquiry." *Porretti*, 11 F.4th at 1047. The "balance of equities" concerns the burdens or hardships to a prisoner complainant compared with the burden on the government defendants if an injunction is ordered. *Id.* The public interest mostly concerns the injunction's impact on nonparties rather than parties. *Id.* (citation omitted). Regardless, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (citation omitted).

Regardless of which standard applies, the movant "has the burden of proof on each element of the test." *See Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). Generally, "[w]hen a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015); *see De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunctive relief is inappropriate for matters "lying wholly outside the issues in the suit").

**III. Discussion**

    **A. Spinal Condition[3]**

The Eighth Amendment prohibits execution procedures that inflict cruel and unusual punishment. *See Baze v. Rees*, 553 U.S. 35 (2008). In *Baze*, the Supreme Court

---

[3] The Court did not receive any argument or evidence regarding how Defendants' planned accommodation of Plaintiff's spinal condition is nonetheless violative of the ADA or the RA (Counts II and III). The Court therefore only analyzes Plaintiff's Eighth Amendment challenge in Count I.

- 6 -

rejected the petitioners' argument that "unnecessary risk" violated the Eighth Amendment and held instead that prisoners facing execution must demonstrate "a 'substantial risk of serious harm,'" or "an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they [are] 'subjectively blameless for purposes of the Eighth Amendment.'" *Id.* at 50 (quoting *Farmer v. Brennan*, 511 U.S. 825, 846, & n. 9 (1994)). Several years later, the Supreme Court further made clear in *Glossip v. Gross* that the standard set forth in *Baze* governs "all Eighth Amendment method-of-execution claims"). *Glossip*, 576 U.S. at 877-78.

Together, *Baze and Glossip* confirm that the Eighth Amendment "does not demand the avoidance of all risk of pain in carrying out executions." *Baze*, 553 U.S. at 47; *see also Bucklew v. Precythe*, 139 S. Ct. 1112, 1124 (2019) ("T][he Eighth Amendment does not guarantee a prisoner a painless death."). *Baze* provides instead that the Constitution affords a "measure of deference to a State's choice of execution procedures" and does not authorize courts to serve as "boards of inquiry charged with determining 'best practices' for executions." *Baze*, 553 U.S. at 51 & n.2. The Eighth Amendment is not impinged unless the risk of pain the prisoner might experience is "substantial when compared to a known and available alternative." *Glossip*, 576 U.S. at 878 (citing *Baze*, 553 U.S. at 61).

Plaintiff argues—and Defendants do not dispute—that he suffers from a serious spinal condition that causes him significant pain. Dr. Joel Zivot testified that Plaintiff has a "series of skeletal deformities throughout his spine, really from the top of his back, the cervical spine region, all the way really to the base of his spine." (June 3, 2022 Preliminary Injunction Hearing Transcript at 98-99). Dr. Zivot opined that, as a result, Plaintiff cannot lie flat, and that the least painful position for Plaintiff requires him to sit at an approximately 60-degree angle with at least one leg bent.

Defendants introduced photographs depicting Plaintiff at rest in his cell. In the photographs, he is on his bed, propped up by pillows and blankets, and his right leg is bent. In several pictures, Plaintiff appears to be asleep, but in one picture Plaintiff is awake. Plaintiff does not appear to be in acute distress. Defendants assert they plan to provide

Plaintiff with a medical wedge on top of the execution table, which will allow Plaintiff to lie in a similar position to when he was in his cell.

Plaintiff does not dispute Defendants' evidence that they plan to provide Plaintiff with a medical wedge and that the execution table is capable of being tilted, which will minimize the pain Plaintiff experiences when he lies on his back. The Court finds that these accommodations preclude a finding that ADCRR's lethal injection protocol creates a "substantial risk of severe pain" or seeks to "superadd terror, pain, or disgrace" to Plaintiff's execution. *Bucklew*, 139 S. Ct. at 1124, 1130. The Eighth Amendment does not require a pain-free execution. *Id.* at 1124. There is no evidence that the position Plaintiff will be in using the medical wedge will be substantially different from the position he assumes in his cell. And although the Court recognizes the pain Plaintiff experiences at all times, that is no basis upon which to conclude his execution violates the Eighth Amendment. Therefore, the Court finds that Plaintiff is not likely to succeed on the merits of his claim and that he has raised serious questions going to the merits of his claim.

### B. Pentobarbital

Plaintiff raises two interrelated challenges to the pentobarbital. First, he argues that ADCRR has deviated from its Execution Protocol in significant ways, thereby violating Plaintiff's right to due process. Plaintiff further alleges there are significant questions about the provenance and quality of the pentobarbital to be used, which create a substantial risk of serious harm in violation of the Eighth Amendment. The Court notes, however, that Plaintiff did not raise an Eighth Amendment challenge to the pentobarbital to be used in his execution. Plaintiff's singular claim in Count V is a due process challenge to Defendants' deviation from the Execution Protocol and the settlement agreement entered in *Wood v. Ryan*, 14-CV-01447-PHX-NVW. As noted, the Court does not have authority to issue an injunction regarding a claim not raised in the complaint. *Pac. Radiation Oncology, LLC*, 810 F.3d at 636. Therefore, the Court will only address Plaintiff's due process claim.[4]

---

[4] Even if Plaintiff had properly raised an Eighth Amendment claim challenging the propriety or quality of the pentobarbital to be used in his execution, the evidence he

Plaintiff argues that ADCRR's Execution Protocol and the Settlement Agreement in *Wood v. Ryan*, 14-CV-01447-PHX-NVW, create binding requirements Defendants must follow.  Plaintiff further argues that Defendants failed to perform a quantitative analysis of the pentobarbital to be used in Plaintiff's execution or to perform the specialized testing required to extend the BUD for compounded pentobarbital violate his due process rights. In support of his due process claim, Plaintiff points to a specific provision of the Settlement Agreement in *Wood v. Ryan*:

> **WHEREAS**, Defendants hereby represent, covenant, and agree, and the parties intend, that Defendants and the ADC will remove from the ADC's current execution procedures the sentence—"[t]his Department Order outlines internal procedures and does not create any legally enforceable rights or obligations"—and that Defendants and the ADC will never again include such language or substantially similar language in any future version of the ADC's execution procedures (together, "Covenant No. 1").

Plaintiff assumes this provision automatically creates a cognizable liberty interest in ADCRR's Execution Protocol.[5]  Plaintiff further points out that the protocol requires Defendants to perform a "quantitative analysis" and to use non-expired lethal injection drugs.  Plaintiff challenges the substance of Defendants' quantitative analysis and of the methodology used by the compounding pharmacist to assign the BUD on the pentobarbital to be used in Plaintiff's execution.

Plaintiff's argument suffers from several fatal flaws.  The first is that Covenant 1 from the *Wood* Settlement Agreement does not automatically create a liberty interest cognizable under the Fourteenth Amendment.  Indeed, Plaintiff fails to point to any caselaw

---

provided was not sufficient to establish a likelihood of success or serious questions on the merits of his claim that using the compounded pentobarbital introduces a substantial risk of severe pain.  *See Baze,* 553 U.S. at 50.

[5] The Court notes Defendants mis-analyze Plaintiff's due process claim.  Defendants contend "Where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (Rehnquist, C.J., for plurality) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Defendants would be correct if Plaintiff were presented a *substantive* due process claim. But Plaintiff presents a *procedural* due process claim.  As a result, it is, in fact, appropriate to evaluate Plaintiff's due process challenge.

- 9 -

that recognizes a state-created liberty interest under similar circumstances. During the evidentiary hearing, Plaintiff relied on *Wolff v. McDonnell*, 418 U.S. 539 (1974) for the proposition that traditional due process cases establish a liberty interest in this case. But merely citing that canonical case is insufficient to recognize a specific liberty interest in Arizona's Execution Protocol.

Further, even if Plaintiff could establish a liberty interest, there is insufficient evidence to conclude Arizona has deviated from its Execution Protocol. The Protocol neither defines "quantitative analysis" nor sets forth requirements for how a BUD must be assigned. As a consequence, there is insufficient evidence that Plaintiff's due process rights have been violated. Without any additional authority, Plaintiff has not shown a likelihood of success, or even serious questions, going to the merits of his claim.

Because the plaintiff bears the burden of "demonstrat[ing] that it meets all four" factors in order to obtain a preliminary injunction, *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776-77 (9th Cir. 2011), and Plaintiff has failed to meet the first factor under either standard, his motion for injunctive relief must be denied.

**IV.   Order to Show Cause**

In its June 1, 2022 Order, the Court directed Plaintiff to show cause why Counts VI and VII should not be dismissed for lack of standing. (Doc. 31). Plaintiff filed his response, contending that he has standing to pursue his due process challenge because he was not provided a constitutional choice of the lethal gas to be used in his execution. Plaintiff argues that his "injury began occurring as soon as the window for making the choice allowed by statute (A.R.S. § 13-757) closed without [Plaintiff] being offered a valid choice" and that such injury continues.

What Plaintiff does not provide, however, is a citation to any authority that he has a due process liberty interest under the Fourteenth Amendment to a choice regarding the method of his execution. Without such authority, there can be no viable due process claim. Nor does Plaintiff identify how he could now choose lethal gas—of whatever type—under Arizona Revised Statute § 13-757. Therefore, because Plaintiff has not established that he

is likely to be executed using lethal gas, there is no basis to conclude he has standing to pursue his Eighth or Fourteenth Amendment claims in Counts VI and VII.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. 16) is **denied**.

**IT IS FURTHER ORDERED** that Counts VI and VII are **dismissed**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Sever Counts VI and VII (Doc. 25) is **denied as moot**.

**IT IS FURTHER ORDERED** that because there is no just reason for delay, *see* Fed. R. Civ. P. 54(b), the Clerk of Court must **enter judgment** as to Counts VI and VII.

**IT IS FURTHER ORDERED** the action remains ongoing as to Plaintiff's remaining claims in Counts I-V and VIII-X.

Dated this 4th day of June, 2022.

Michael T. Liburdi
United States District Judge